```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED: 1/26/11
----------------------------------X
UNITED STATES OF AMERICA,         :
                                  :
     - against -                  :      10 Cr. 316 (VM)
                                  :
RAFAEL JIMENEZ, et al.,           :      DECISION AND ORDER
                                  :
            Defendants.           :
----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Defendants Rafael Jimenez ("Jimenez") and Alfredo Rivera ("Rivera") (together, "Defendants") are charged with one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; one count of extortion under color of official right, in violation of 18 U.S.C. § 1951(a); and one count each of using a firearm in connection with crimes of violence and drug trafficking, in violation of 18 U.S.C. § 924(c).

Rivera now moves for orders to: (1) suppress (a) evidence obtained pursuant to court-authorized electronic wiretaps, and (b) all evidence, other than a firearm, obtained from the search of Rivera's apartment by law enforcement officers; and (2) sever his trial from that of co-defendant Jimenez.  In addition, Jimenez moves for orders to: (1) suppress Jimenez's post-arrest statements; (2) direct the Government to disclose various materials, including (a) those within the scope of Kyles v. Whitley,

514 U.S. 419 (1995), Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972); (b) notice of evidence of prior bad acts that the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"); and (c) a bill of particulars setting forth information concerning any confidential source with whom the Government may have worked in connection with its criminal investigation; (3) sever Jimenez's trial from that of co-defendant Rivera; and (4) permit Jimenez to make additional motions as may be appropriate.

For the reasons set forth below Rivera's motion is DENIED in part, and Jimenez's motion is DENIED in its entirety.

## A. WIRETAP EVIDENCE

Rivera moves to suppress wire communications intercepted by law enforcement officials pursuant to an Order dated March 9, 2010 (the "March 9 Order"), issued by Judge Shira Scheindlin of this District, sitting as the Part I Judge. He argues that the March 9 Order improperly authorized the use of electronic wire surveillance without a sufficient showing that normal investigative procedures would have been insufficient to achieve the goals of the investigation.

2

## 1. Legal Standard

Pursuant to 18 U.S.C. § 2518, a court may authorize electronic wire surveillance based upon, among other requirements, a showing that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); see also 18 U.S.C. § 2518(1)(c). As the Second Circuit has stated, "the purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents." United States v. Torres, 901 F.2d 205, 331 (2d Cir. 1990) (internal quotation marks omitted). Rather, "[t]he statute only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." United States v. Conception, 579 F.3d 214, 218 (2d Cir. 2009) (internal quotation marks omitted). This showing should be tested in a practical and commonsense fashion, see id., and the decision by the issuing district court to authorize wiretap surveillance may be overturned only for an abuse of discretion. See id. at 271.

3

## 2. Discussion

Rivera argues that, while the affidavits submitted to Judge Scheindlin (the "Application") averred that normal investigatory techniques were not likely to succeed, the facts as detailed in the Application itself demonstrated that techniques such as the use of informants and surveillance were in use and succeeding at the time the application was made. Rivera contends, therefore, that there was no basis for the conclusion that these methods, in conjunction with the possible deployment of undercover officers, would be insufficient to achieve the investigation's goals.

The Court is not persuaded. In point of fact, the Application made clear that, although informants and surveillance activity had been successful in uncovering valuable information as to the Defendants, the informants' value in providing intelligence regarding other members of the drug conspiracy beyond the Defendants was limited because Jimenez was their only point of contact. Further, the Application stated that surveillance was of limited value due to the nature of the locations in which the conspiracy was discussed and Defendants' avowed sensitivity to law enforcement surveillance techniques -- particularly

4

in light of Jimenez's then-current employment as an auxiliary New York Police Department ("NYPD") officer and Rivera's prior employment as an NYPD officer. Indeed, Rivera was recorded by an informant describing measures he would employ to evade law enforcement surveillance. Finally, the Court finds sufficient the Application's statement that, without a senior member of the drug organization to initiate an introduction, an undercover officer would have been unlikely to gain the trust required to infiltrate the high levels of the targeted conspiracy.

Given these attestations, the Court cannot conclude that Judge Scheindlin abused her discretion in authorizing the use of electronic wiretap surveillance in the March 9 Order. See United States v. Tripe, 171 F. Supp. 2d 230, 236 (S.D.N.Y. 2001) ("The issuing judge's determination that the Government has made adequate use of alternative investigatory techniques is entitled to substantial deference." (citing United States v. Wilkinson, 754 F.2d 1427, 1433 (2d Cir. 1985)). Consequently, Rivera's motion to suppress his statements derived surveillance is denied.

## B. SEARCH WARRANT EVIDENCE

Next, Rivera seeks an order to suppress all evidence, with the exception of a firearm, seized from his

5

apartment during a search conducted following his arrest on April 13, 2010.  In connection with that application, Rivera has submitted a bare-bones, four paragraph affidavit stating that, although he signed a form (the "Consent Form") authorizing officers to enter his apartment,[1] he did not read the Consent Form, and believed and intended that the scope of the officers' activity would be limited to retrieving a licensed firearm the officers knew to be located in Rivera's closet.  In any event, Rivera argues in his memorandum of law that he did not sign the Consent Form voluntarily, but rather acquiesced to the authority of the police.

In determining whether consent to search was given voluntarily, the Court must consider and weigh the totality of the circumstances surrounding the alleged consent.  See United States v. Yu-Leung, 910 F.2d 33, 41 (2d Cir. 1990). Consequently, "an evidentiary hearing on a motion to suppress is ordinarily required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that

---

[1] The form, which is entitled "CONSENT TO SEARCH" and dated April 13, 2010 stated, "I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of [REDACTED] ... I give this permission voluntarily ... [and] authorize these agents to take any items which they determine may be related to their investigation." (See Rivera Aff't Ex. 1 (Docket No. 24-1).)

6

contested issues of fact going to the validity of the search are in question." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotation marks omitted).

The Government does not dispute that Rivera's affidavit is sufficient to create a question of fact requiring an evidentiary hearing regarding whether Rivera consented to a full search of his apartment, or whether he simply agreed to the officers' request to allow them to enter his apartment to retrieve the firearm in his closet. However, the Government argues that, as Rivera makes no statements in his affidavit indicating that he did not voluntarily sign the Consent Form, the evidentiary hearing should be limited to the issue of the scope of Rivera's consent.

The Court agrees that Rivera's affidavit raises a factual issue sufficient to warrant a hearing regarding whether Rivera authorized officers to conduct any search of his apartment beyond that required to retrieve the firearm from his closet. The Court also finds, however, that Rivera's affidavit does not make "sufficiently definite, specific, detailed and nonconjectural" allegations for the Court to conclude that a question of facts exists as to the voluntariness of Rivera's signing the Consent Form. See id. Indeed, on its face, Rivera's affidavit suggests that he

7

signed the Consent Form voluntarily in the belief that his consent was limited to retrieving the firearm, and his affidavit contains no averments to the contrary. (See Rivera Aff't (Docket No. 24) ¶ 4 ("After I agreed to allow them to enter my apartment to remove the weapon, I was told to sign a piece of paper, which I assumed allowed them to retrieve the weapon from the closet.").)

The Court will therefore hold a suppression hearing limited to the single issue of the scope of the consent that Rivera provided.

## C.   SEVERANCE

Jimenez and Rivera move separately for severance under Federal Rule of Criminal Procedure 14(a) ("Rule 14(a)"), each asserting that he is entitled to a separate trial from the other. Each argues that that the introduction at trial of the post-arrest statement of the other will unfairly prejudice him and violate his right to confrontation under the Sixth Amendment. Rivera also argues that severance is required because each defendant intends to argue that he was entrapped by the other, and therefore, "to acquit one defendant, the jury will have to convict the other." (See Rivera Mem. (Docket No. 25) at 15.)

## 1. **Post-Arrest Statements**

### a. **Legal Standard**

Federal Rule of Criminal Procedure 8(b) ("Rule 8(b)") allows the Government to join defendants who "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting and offense or offenses." Fed. R. Crim. P. 8(b).   Conversely, Rule 14(a) grants the court discretion to sever the trials of codefendants where they have been indicted together properly under Rule 8(b), but joinder nonetheless "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).  A defendant seeking severance pursuant to Rule 14(a) must overcome the strong presumption in favor of trying jointly-indicted defendants together.  See United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993) ("The principles that guide the district court's consideration of a motion for severance usually counsel denial."); United States v. Ventura, 724 F.2d 305, 312 (2d Cir. 1983) ("[A]bsent a showing of substantial prejudice, defendants who are jointly indicted should be jointly tried.").

In evaluating a defendant's Rule 14(a) motion, courts must consider whether separate trials of jointly indicted defendants could "impair both the efficiency and the

fairness of the criminal justice system" by requiring prosecutors to bring "separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying." Richardson v. Marsh, 481 U.S. 200, 210 (1987). Moreover, individual trials present the risk of "randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." Id. By contrast, joint trials "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Id.

Therefore, a defendant moving for severance under Rule 14(a) must prove "facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial." United States v. An-Lo, 851 F.2d 547, 556 (2d Cir. 1988); see also Zafiro v. United States, 506 U.S. 534, 537 (1993). In cases where it appears that joinder will prejudice a party, Rule 14(a) does not require severance, but rather "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 539.

10

###### b.  Discussion

Both Defendants argue that admission of the other's post-arrest statement will violate his right to a fair trial and that therefore severance is required by United States v. Bruton, 391 U.S. 123 (1968).

In Bruton, the Supreme Court held that admission of a non-testifying co-defendant's statement at a joint trial which on its face incriminates a defendant constitutes a violation of that defendant's Sixth Amendment right to confront his accusers.  See 391 U.S. at 135-36.  The Supreme Court has made clear in subsequent cases, however, that a redacted statement in which a co-defendant's name is eliminated in a non-obvious manner may be admissible under Bruton.  See Richardson, 481 U.S. at 211; Gray v. Maryland, 523 U.S. 185, 192 (1998).  In United States v. Alvarado, the Second Circuit held that "a redacted statement in which the names of co-defendants are replaced by neutral pronouns ... and where the statement standing alone does not otherwise connect co-defendants to the crimes," coupled with a proper limiting instruction, "may be admitted without violating a co-defendant's Bruton rights."  882 F.2d 645, 651 (2d Cir. 1989), overruled on other grounds, Bailey v. United States, 516 U.S. 137 (1995).  The redacted confession must be viewed

11

in isolation from other evidence at trial to determine
whether it incriminates a co-defendant.  See United States
v. Williams, 936 F.2d 698, 700-01 (2d Cir. 1991).  If the
confession, "when so viewed, does not incriminate the
defendant, then it may be admitted with a proper limiting
instruction even though other evidence in the case indicates
that the neutral pronoun is in fact a reference to the
defendant."  Id.; see also Kyles, 40 F.3d at 526.  Courts in
this Circuit employ a two-step analysis in ruling on the
sufficiency of proposed redactions.  First, the court should
determine whether the redacted statements contain "obvious
indications of alteration," or "signal[] to the jury that
the statements ... originally contained actual names."
United States v. Jass, 569 F.3d 47, 62 (2d Cir. 2009).
Second, the court must ask, "whether the redacted
confession, even if [it were] the very first item introduced
at trial, would inculpate [the co-defendant] in the charged
crime."  Id. at 61.

Here, the Government has proposed redactions to each
defendant's post-arrest statement in which the co-
defendant's name has been replaced with the neutral phrases,
"other person" and "another person."   Rivera argues that
Jimenez's post-arrest statement contains so many

12

incriminating references to Rivera that, even if redacted, there still would be no doubt that Rivera was the unidentified person to whom Jimenez referred.

The Court disagrees. The effect of the Government's suggested redactions of Jimenez's statement, in conjunction with the outright deletion of a sentence in which Jimenez indicated that the "other person" was a retired NYPD officer, results in a statement that "might actually have been said by a person admitting his own culpability ... while shielding the specific identity of his confederate." Id. at 62; see also United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989) (affirming conviction where statement of defendant was redacted to refer to his co-defendants as "others," "other people" and "another person."[2]   In any event, the Court need not decide at this time the final form of statements sought to be introduced at trial.   For the purposes of Defendants' instant motions, it suffices that the Court finds that the redactions proposed by the Government, in addition to any further changes or fine-tuning the Court may consider or see fit to direct immediately prior to trial, will be sufficient to alleviate

---

[2] Similarly, the Government proposes to delete an entire sentence in Rivera's post-arrest statement indicating that Jimenez was an auxiliary NYPD officer.

Sixth   Amendment   concerns   under   <u>Bruton</u>.[3]   Therefore, severance is not warranted.

## 2.   <u>Mutually Antagonistic Defenses</u>

Rivera also argues that severance is required because the Defendants will present defenses which will require the jury to convict one defendant in order to acquit the other. Specifically, Rivera contends that, while he will assert that he was "enticed and entrapped" into the criminal conspiracy by Jimenez and police informants, Jimenez will argue that he was entrapped and that Rivera "performed all the blameworthy conduct." (Rivera Mem. at 15.) According to Rivera, these defenses amount to more than "blame shifting," but rather present fundamentally irreconcilable stances by the two Defendants. (<u>Id.</u>)

Again, the Court disagrees. "An adversarial stance by a codefendant clearly does not, alone, require trials to be severed." <u>United States v. Cardascia</u>, 951 F.2d 474, 484 (2d Cir. 1991). While "mutually antagonistic" or "irreconcilable" defenses "may be so prejudicial in some circumstances as to mandate severance ... [they] are not prejudicial <u>per se</u>." <u>Zafiro</u>, 506 U.S. at 937. Rather, a

---

[3] The Court observes, however, that particularly identifying information, such as each defendant's statement that the "other person" worked as a security guard at Lulo's Restaurant, is clearly too specific for admission.

14

district court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. at 539-40.  At the threshold, defendants must articulate "specific instances of legally cognizable prejudice." United States v. Hardwood, 998 F.2d 91, 95 (2d Cir. 1993) (internal quotation marks and citation omitted).  Even then, severance is not required, but rather remains committed to the sound discretion of the trial court.  See id.; see also Zafiro, 506 U.S. at 539 (noting that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

Here, the defenses described by Rivera's motion are non-specific, and, contrary to Rivera's conclusory assertions, amount to little more than finger-pointing in an attempt to shift blame from one defendant to another.  See Zafiro, 506 U.S. at 539 (affirming denial of severance by Circuit Court, which noted that "mutual antagonism ... and other ... characterizations of the effort of one defendant to shift the blame from himself to a codefendant neither control nor illuminate the question of severance."); Hardwood, 988 F.2d at 95-96 (affirming denial of severance

15

where two defendants claimed the other owned the drugs found in the van in which they were both riding).  Consequently, both Defendants' motions for severance are denied.

## D.  JIMENEZ'S POST-ARREST STATEMENT

Jimenez also moves for an order to suppress statements he made to law enforcement following his arrest on the ground that they were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).

Jimenez's memorandum of law states that Jimenez was arrested while sitting in a car and questioned by officers immediately, prior to being removed to another location, given Miranda warnings, and interrogated.  (See Jimenez Mem. (Docket No. 30) at 1-2.)    However, in the affidavit submitted in support of his application, Jimenez affirms, "after being placed under arrest, I was immediately transported to another location where I was interrogated ... I have no recollection of being given any Miranda Warnings." (Jimenez Aff't (Docket No. 29) ¶ 3.)  This averment contains no suggestion that Jimenez was interrogated in the motor vehicle at the time of his arrest.   See United States v. Ahmad, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) ("A party seeking to raise a factual issue to be determined at a hearing must submit admissible evidence which, if credited,

16

would make out a prima facie case on the issue. This in turn requires that the issue ordinarily be raised by an affidavit of a person with personal knowledge of the facts."). Nor does Jimenez's failure to recall whether he was warned, when coupled with the unchallenged notification and waiver of rights actually signed by Jimenez (See Jimenez Aff't Ex. A), create a question of fact regarding whether his subsequent interrogation was proper under Miranda. See United States v. Kuznetsov, 442 F. Supp. 2d 102, 111 (S.D.N.Y. 2006) (holding that defendant's statement that he had no recollection of being read Miranda warnings was insufficient to raise factual issue requiring an evidentiary hearing).

Consequently, the Court finds that Jimenez has failed to set forth definite, specific, detailed, and nonconjectural allegations sufficient to warrant an evidentiary hearing on whether he was advised of, and voluntarily waived, his Miranda rights. Jimenez's motion is therefore denied.

**E. DISCLOSURE MOTIONS**

Finally, Jimenez moves for orders to direct the Government to disclose various materials, including (a) documents within the scope of Kyles, Brady, and Giglio; (b)

17

notice of evidence of prior bad acts that the Government intends to introduce at trial pursuant Rule 404(b); and (c) a bill of particulars setting forth information concerning any confidential sources with whom the Government may have worked in connection with its criminal investigation. As discussed below, these motions are either premature or are not properly supported. Consequently, they are denied.

1.  Kyles, Brady and Giglio Materials

The Government has an obligation to disclose favorable or exculpatory evidence to the defendant where such evidence is "material" to either guilt or punishment, see Brady, 373 U.S. at 87; Kyles, 514 U.S. at 432-33, or where the evidence would be useful to impeach the credibility of a Government witness. See Giglio, 405 U.S. at 154-55. However, the Government need only provide such material "in time for its effective use at trial." United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001).

Here, the Government warrants that it is not currently aware of any Brady or Kyles materials, but that it will provide timely disclosure if it learns of the existence of any such material. This representation is acceptable at this stage. See United States v. Gallo, No. 98 Cr. 338, 1999 WL 9848, at *8, (S.D.N.Y. Jan 11, 1999). In any event,

18

Jimenez has made no showing of need for the disclosure of any such materials, or any material covered by Giglio, this far in advance of trial -- indeed before a trial date has even been set in this matter. Consequently, his motion for immediate disclosure is denied.

### 2. Rule 404(b) Evidence

Similarly, while the Government must disclose, pursuant to Rule 404(b), any prior bad acts evidence that it intends to use against the defendant at trial, Jimenez has offered no justification for his request that such material be provided now, before a trial has even been scheduled. Under the circumstances, the Government's statement that it will provide any Rule 404(b) material no later than 30 days prior to trial is more than sufficient. See United States v. Valenti, 60 F.3d 941, 945 (2d Cir. 1995). Therefore, Jimenez's motion for immediate disclosure of Rule 404(b) material is denied.

### 3. Bill of Particulars

Jimenez asserts that he is entitled to be provided with a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f). However, Jimenez fails to actually make any arguments in his brief in support of this assertion. In any event, a Bill of Particulars is warranted only where "the

19

charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." Torres, 901 F.2d at 234. Here, by contrast, the Superseding Indictment is straightforward, and, coupled with the discovery provided by the Government and ample time to review that discovery, "discloses sufficient information to inform the defendants adequately of the charges against them." United States v. Ferrarini, 9 F. Supp. 2d 284, 299 (S.D.N.Y. 1998). Further, to the extent that Jimenez requests information regarding confidential informants in this case, the Government is not required to provide such information absent a showing that the informant's testimony is material to the defense. See United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). Jimenez has not made such a showing. Consequently, Jimenez's motion for a bill of particulars is denied.

## F.  ADDITIONAL MOTIONS

Finally, Jimenez requests permission to file additional motions as he may deem appropriate in the future. However, Jimenez has had more than enough time to consider what pre-trial motions he wished to file during the seven months that passed between the time the original indictment was unsealed and the deadline for motions set by the Court. Pursuant to

20

Federal Rule of Criminal Procedure 12(e), "[a] party waives any [pre-trial motion] not raised by the deadline the Court sets." Fed. R. Crim. P. 12(e). While the Court may grant relief from the waiver upon a showing of good cause, see id., Jimenez has not made such a showing; certainly he has not justified his request for carte blanche permission to file any additional, unspecified motions as he may see fit in the future. Consequently, Jimenez motion is denied at this time. This ruling is without prejudice, however, to Jimenez's ability to show, at some point in the future, good cause to support the filing of a specifically identified motion.

### ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the motion (Docket No. 22) of defendant Alfredo Rivera ("Rivera") for orders to: (1) suppress evidence obtained pursuant to court-authorized electronic wiretaps, and (2) sever his trial from that of co-defendant Rafael Jimenez ("Jimenez"), are DENIED; and it is further

**ORDERED** that Jimenez's motion (Docket No. 27) for orders to: (1) sever his trial from that of co-defendant Rivera, (2) suppress Jimenez's post-arrest statements, (3) direct the Government to produce various discovery

21

materials, and (4) permit Jimenez to file such additional pre-trial motions as Jimenez deems appropriate are DENIED; and it is further

**ORDERED** that the Government and Rivera are directed to appear on February 15, 2011 at 2:00 p.m. for an evidentiary hearing limited to the issue of the scope of consent to search his apartment that Rivera provided to law enforcement officers following his arrest.

**SO ORDERED.**

Dated:      New York, New York
            26 January 2011

                                    Victor Marrero
                                    U.S.D.J.

22